WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

GoDaddy.com, LLC,

                    Plaintiff,

v.

RPost Communications Limited, et al.,

                    Defendants.

No. CV-14-00126-PHX-JAT

**ORDER**

        Pending before the Court is Defendants RPost International Limited's and RMail Limited's Motion to Dismiss Counts III–XII of the First Amended Complaint under Fed. R. Civ. P. 12(b)(1). (Doc. 56). The Court now rules on the motion.

**I.      Background**

        GoDaddy.com, LLC ("GoDaddy") has brought this Declaratory Judgment Action against Defendants RPost Holdings, Inc. ("RPost Holdings"), RPost International Limited ("RPI"), RMail Limited ("RMail"), and RPost Communications Limited ("RComm") (collectively, "RPost") seeking, among other things, declarations of invalidity and noninfringement of U.S. Patent Nos. 8,209,389 ("the '389 patent"), 8,224,913 ("the '913 patent"), 8,161,104 ("the '104 patent"), 8,468,198 ("the '198 patent"), and 8,468,199 ("the '199 patent") (collectively "the Tomkow Patents") in Counts III–XII of the First Amended Complaint. (Doc 46 at 18–32). RPI and RMail seek dismissal of Counts III– XII claiming that they have no right, title, or interest in the Tomkow Patents, and therefore, GoDaddy has no standing to seek declaratory relief against them. (Doc. 56 at 1).

### A.      Ownership History of the Tomkow Patents

Starting in 1999, Dr. Terrance Tomkow applied for the Tomkow Patents, which describe a way of tracking and confirming delivery of email. (Doc. 46 at 6). Kenneth Barton and Zafar Khan joined Tomkow in creating a corporate structure to protect this intellectual property and founded RPI, in which Tomkow, Barton, and Khan were all principal shareholders. (*Id.*) On May 20, 2001, Dr. Tomkow assigned the applications for the Tomkow Patents to RPI. (Doc 35-2 at 2). An assignment agreement dated March 21, 2011 shows that RPI then assigned the Tomkow Patents to RComm. (Doc. 46-2 at 1, 9–13; Doc. 59 at 1–2). Barton did not sign the agreement assigning the Tomkow Patents from RPI to RComm. (Doc. 46-2 at 4).

### B.      Related Prior and Pending Litigation

Barton's relationship with Tomkow and Khan fell apart over time, and Barton eventually brought two actions against Tomkow and Khan (the "Barton Cases"). (Doc. 46 at 6). In the First Barton Case, a California court found that Tomkow, Khan, and RPI had committed fraud and breach of fiduciary duty against Barton, and Tomkow, Khan, and RPI were ordered to pay him general and punitive damages. *RMail Limited v. Amazon.com, Inc.*, 2:10-cv-258-JRG, 2014 U.S. Dist. LEXIS 25597, at *15–16 (E.D. Tex. Jan. 30, 2014) (providing an overview of the facts of the Barton Cases). In the Second Barton Case, Barton brought another state action against RPI, RMail, and RComm alleging that RPI, Tomkow, and Khan fraudulently transferred corporate assets, including intellectual property assets, of RPI to RComm and RMail. *Id.* Barton seeks in the Second Barton Case to void the transfer of those assets, *id.* at *16, which included the Tomkow Patents. (Doc. 46-2 at 1, 9–13).

Khan and Tomkow have each filed for bankruptcy under Chapter 13 (the "Bankruptcy Cases"). *Amazon*, 2014 U.S. Dist. LEXIS 25597, at *16. Barton has objected to the bankruptcy filings, and the bankruptcy court granted his motions to convert Khan and Tomkow's Chapter 13 Bankruptcy Cases to Chapter 7. *Id.* at *17.

- 2 -

There have been various lawsuits in which the Tomkow Patents are at issue. In *Amazon*, RPost Holdings, RMail, and RComm asserted various patents against the defendants. *Id.* at *12. The *Amazon* court learned of the pending Barton Cases and Bankruptcy Cases, *id.* at *15, which RPost had never mentioned, and therefore stayed the *Amazon* case until the Barton Cases and Bankruptcy Cases are resolved. *Id.* at *31. The court said, "If the fraudulent transfer claims are ultimately resolved in Barton's favor and the March 2011 transaction declared null and void, then that result would have a considerable impact on Plaintiffs' standing to sue" for patent infringement. *Id.* at *27.

In *Trend Micro Inc. v. RPost Holdings, Inc.*, 13-CV-05227-WHO, 2014 WL 1365491 (N.D. Cal. Apr. 7, 2014), Trend Micro sued defendants, including RPI and RMail, in a declaratory judgment action seeking, among other things, a declaration of patent noninfringement and invalidity of some of the Tomkow Patents. *Id.* at *1. The court granted RPI's motion to dismiss for lack of subject-matter jurisdiction, finding that RPI had no legal interest in the Tomkow Patents, and therefore, Trend Micro did not have standing to sue RPI. *Id.* at *6–8.

###### C.     RPost's Assertions of the Tomkow Patents Against GoDaddy

RPost, referring to itself as simply "RPost" in its communications, contacted GoDaddy and advised of its belief that GoDaddy was infringing the Tomkow Patents. (Docs. 46-3, 46-4). In an email on July 17, 2013 (Docs. 46-4) and a letter on October 4, 2013 (Doc. 46-5), RPost represented that it had clear, unclouded rights to license the Tomkow Patents. (*See* Docs. 46-4 at 2–4, 46-5 at 4). GoDaddy seeks in Counts III–XII of its First Amended Complaint a declaration of invalidity and/or noninfringement of the Tomkow Patents. (Doc. 46 at 18–32). RPI and RMail move to dismiss these counts by making a factual subject-matter jurisdiction challenge, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), on the basis that they have no legal interest in the Tomkow Patents. (Doc. 56).

## II.    Legal Standard

### A.    Rule 12(b)(1)

"The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). The defense of lack of subject-matter jurisdiction may be raised at any time by the parties or the court. *See* Fed. R. Civ. P. 12(h)(3). A Rule 12(b)(1) motion to dismiss "for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

In resolving a "speaking motion" or "factual attack" under Rule 12(b)(1), once the moving party has offered affidavits or other evidence disputing the allegations in the complaint, the nonmoving party must submit sufficient evidence to satisfy its burden of establishing that the court does have subject-matter jurisdiction over the dispute. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In a factual 12(b)(1) challenge, the court is not limited to the allegations in the pleadings if the jurisdictional issue is separable from the merits of the case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Instead, the court may view evidence outside the record, and no presumptive truthfulness attaches to the complaint's allegations that bear on the subject-matter jurisdiction of the court. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Indeed, "the district court is . . . free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Id.* However, if the court resolves a Rule 12(b)(1) motion on declarations alone without an evidentiary hearing, it must accept the complaint's factual allegations as true. *McLachlan v. Bell*, 261 F.3d 908, 909 (9th Cir. 2001).

1

2

**B.      Standing in Patent Infringement Cases**

3

A plaintiff must have standing to sue in order to satisfy the case-or-controversy

4

requirement of Article III of the Constitution, and it is a requirement to establish subject-

5

matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

6

Standing must be present at the outset of the suit. *Abraxis Bioscience, Inc. v. Navinta

7

LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) ("'[I]f the original plaintiff lacked Article III

8

initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured'

9

after the inception of the lawsuit." (quoting *Schreiber Foods, Inc. v. Beatrice Cheese,

10

Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005))). These requirements also apply to

11

declaratory judgment actions. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118,

12

126–28 (2007).

13

In declaratory judgment actions for patent invalidity and noninfringement, a

14

plaintiff lacks standing when the defendants have insufficient interest in the patents in

15

question such that the defendants would be unable to enforce the patents against

16

infringement. *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1094 (Fed. Cir.

17

1998) (holding that because Geapag did not have standing to enforce the patents-in-suit,

18

"the court lack[ed] jurisdiction over Enzo's declaratory judgment claims"); s*ee also

19

Abraxis Bioscience*, 625 F.3d at 1364 ("in a patent infringement action, 'the plaintiff must

20

demonstrate that it held enforceable title to the patent at the inception of the lawsuit to

21

assert standing'" (quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304,

22

1309–310 (Fed. Cir. 2003)). "[W]hen a party holds all rights or all substantial rights [in a

23

patent], it alone has standing to sue for infringement." *Morrow v. Microsoft Corp.*, 499

24

F.3d 1332, 1340 (Fed. Cir. 2007). Therefore, for a court to have subject-matter

25

jurisdiction in a declaratory action for patent invalidity and noninfringement, the

26

defendant(s) must own all rights or all substantial rights to the patents-in-suit.

27

28

- 5 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    Discussion

### A.    RPost's Communications to GoDaddy

GoDaddy's position that it has standing to sue RPI and RMail begins with the argument that the demand letters sent by RPost create a justiciable case or controversy regardless of whether the author(s) of the letters are owners of the Tomkow Patents. (*See* Doc. 69 at 9–10). GoDaddy first cites *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007), stating that "[u]nder the 'all circumstances test,' GoDaddy 'need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.'" (Doc. 69 at 9) (quoting *Sandisk*, 480 F.3d at 1378, 1381). However, *Sandisk* provides no guidance for a case, such as this case, in which the party allegedly asserting the patents is not the patent owner. It only applies to cases or controversies arising "when *a patentee* asserts rights under a patent." *Sandisk*, 480 F.3d at 1381 (emphasis added). Therefore, GoDaddy's reliance on *Sandisk* in this case is misplaced.

GoDaddy then cites *Frederick Goldman, Inc. v. West*, No. 06 Civ. 3413(LTS)(RLE), 2007 WL 1989291 (S.D.N.Y. July 6, 2007). (Doc. 69 at 9). In *Frederick Goldman*, the plaintiff filed a declaratory judgment action against the defendant seeking a declaration of noninfringement, invalidity, or unenforceability of certain patents. *Frederick Goldman*, 2007 WL 1989291, at *1. Plaintiffs named Trent West, Trent West, Inc. ("TWI"), and Trent West Design as the defendants, but TWI moved to dismiss for lack of subject-matter jurisdiction claiming that it did not own the patents-in-suit. *Id.* Despite this claim, the court in *Frederick Goldman* found that there was a case or controversy between the parties because of the adversarial language in the patent infringement notices signed by TWI. *See Frederick Goldman*, 2007 WL 1989291, at *3.  The court acknowledged that "[p]atent ownership is, of course, a key element of a cause of action putting in controversy the validity of a patent," *id.* at *4, but it failed to acknowledge the essential principle that there can be no case or controversy in a

declaratory judgment action for patent noninfringement and invalidity against a defendant who has no legal interest in the patents-in-suit. *Enzo*, 134 F.3d at 1094; *see also Abraxis Bioscience*, 625 F.3d at 1364. The court glazed over the issue of TWI's claimed lack of patent ownership by finding that the jurisdictional and substantive issues of the case are so intertwined that the resolution of the jurisdictional issues should await an inquiry into the merits of the case without giving reasons for such a finding. *Id.* at *4.

In the present case, GoDaddy makes the same argument about the intertwining of jurisdictional and substantive issues. (Doc. 69 at 8). However, if there is no case or controversy without patent ownership, the jurisdictional issue of patent ownership can and should be resolved before reaching the substantive issues of patent noninfringement and invalidity. The determination of the jurisdictional issue of patent ownership will not disrupt proper adjudication of the substantive issues of patent noninfringement and invalidity because these jurisdictional and substantive issues are independent of one another.

Furthermore, unlike in *Frederick Goldman* in which TWI simply claimed it did not own the patents-in-suit, RPI and RMail have demonstrated their lack of ownership through the submission of the United States Patent and Trademark Office assignment documents. (Doc. 46-2 at 1, 9–13). GoDaddy could have easily reviewed these documents, which would have resolved any confusion regarding which party was able to assert which patent(s). Therefore, it was readily discernable over which parties the Court would have subject-matter jurisdiction in this declaratory judgment action. Furthermore, the Court is able to resolve the jurisdictional issue of patent ownership and still evaluate the substantive issues in the case, uninhibited. For these reasons, along with the fact that *Frederick Goldman* is an unreported case from another court, the Court finds *Frederick Goldman* unpersuasive in the determination of whether there is subject-matter jurisdiction over Counts III–XII of the First Amended Complaint against RPI and RMail.

- 7 -

1

2

**B.     The Transfer of the Tomkow Patents from RPI to RComm**

3              GoDaddy's argument that it has standing to sue RPI and RMail revolves around

4      the allegation that the assignment of the Tomkow Patents from RPI to RComm was

5      fraudulent, and therefore, RPI is the true owner of the Tomkow Patents. (Doc. 69 at 10).

6              The *Amazon* and *Trend Micro* cases involving RPost entities and very similar

7      factual scenarios provide some guidance in resolving the issues in the present case. In

8      *Amazon*, RPost Holdings and RComm initially asserted some of the Tomkow Patents,

9      among other patents, against the defendants. *Amazon*, 2014 U.S. Dist. LEXIS 25597, at

10     *13–14. RMail did not assert any of the Tomkow Patents, and RPI is not a party in the

11     *Amazon* case. *Id.* The defendants moved to dismiss for lack of standing, arguing that the

12     pending Second Barton Case and Bankruptcy Cases caused the plaintiffs to lack the right

13     to enforce the patents. *See id.* at *14. The *Amazon* court reasoned that if the court in the

14     Second Barton Case finds that the transfer of the Tomkow Patents to RComm was

15     fraudulent, then RPI may be the Tomkow Patents' owner. *See id.* at *27. Therefore, the

16     court stayed the action pending the resolution of the Barton and Bankruptcy Cases. *Id.* at

17     *28–31.

18             In the present case, RPI and RMail assert that they are not the owners of the

19     Tomkow Patents. (Doc. 56 at 1–2). Various aspects of *Amazon* give evidence to this

20     assertion: (1) RPI is not a plaintiff asserting the Tomkow Patents; (2) RPI was not

21     deemed an owner of any of the patents-in-suit; and (3) RMail is not the plaintiff asserting

22     any of the Tomkow Patents, only RPost Holdings and RComm are asserting them. These

23     facts support the argument that that there is no standing to sue RPI and RMail for claims

24     regarding the Tomkow Patents because they do not own the Tomkow Patents.

25             Even more compelling is the similarity of the *Trend Micro* to the present case.

26     Trend Micro filed a declaratory judgment action against RPI and RMail, among other

27     defendants, for patent noninfringement and invalidity. *Trend Micro*, 2014 WL 1365491,

28     at *1. The court granted RPI's motion to dismiss for a lack of standing because RPI had

established that it did not have any legal interest in the patents-in-suit, *id.* at *8, which included some of the Tomkow Patents. The court recognized that though RPI may be found to be the owner of the Tomkow Patents if the judge in the Second Barton Case deems their transfer from RPI to RComm to be fraudulent, a lack of subject-matter jurisdiction cannot be cured after the initiation of a lawsuit. *Id.* at *7–8. The court did not dismiss RMail from the action, but it acknowledged that "R[Comm] is the current owner of the patents-in-suit, and R[Comm] alone has standing to sue for infringement." *Id.* at *8 (internal quotation marks omitted).

Like in *Amazon* and *Trend Micro*, in this case, the legitimacy of the assignment of the Tomkow Patents to RComm is not the present issue before the Court, nor has that assignment been deemed fraudulent by any court to date. Even so, GoDaddy attacks the credibility of Zafar Khan's Declaration in support of the instant motion (Doc. 59), which states that the RPI sold its "entire right, title, interest, and obligations" in the Tomkow Patents to RComm. (Doc. 69 at 12–14). GoDaddy argues that RPI and RMail rely almost exclusively on Khan's Declaration (Doc. 59) for the instant motion, and that Khan's words should be given no legal weight considering the previous and pending legal proceedings in which Khan has been found to have committed fraud or in which his honesty has been called into question. (Doc. 69 at 12–14). However, Khan's declaration is corroborated by the documents showing the assignment history of the Tomkow Patents. (Doc. 35-2; Doc 46-2). Both Khan's declaration (Doc. 59) and the Tomkow Patent assignment history documents (Docs. 35-2; 46-2) establish that the Tomkow Patents are now owned by RComm.

For these reasons, the Court finds that GoDaddy has failed to show that RPI and RMail have any legal interest in the Tomkow Patents at this time. Therefore, RPI and RMail do not have standing to sue for infringement of the Tomkow Patents nor does a declaratory judgment plaintiff have standing to sue RPI or RMail for patent noninfringement or invalidity. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328

1   (Fed. Cir. 2001) (holding that a plaintiff-inventor, who assigned his patent to a

2   corporation in which he was the sole shareholder and managing director prior to filing the

3   action, lacked standing to sue for infringement).

4       GoDaddy cites the Restatement (Second) of Torts § 433B(3), which discusses the

5   burden of proof regarding apportionment of harm, claiming that because there have been

6   multiple parties under scrutiny for fraud, which may involve the Tomkow Patents, RPI

7   and RMail have the burden to prove facts that would negate jurisdiction. (Doc. 69 at 15).

8   This argument is meritless. It is well-established that the burden to prove that a court has

9   jurisdiction is on the party asserting jurisdiction. *Lujan*, 504 U.S. at 560–61. Moreover,

10  regarding declaratory judgment patent issues, there can only be a case or controversy

11  with defendants who have a legal interest in the patents-in-suit. *Enzo*, 134 F.3d at 1094;

12  *see also Abraxis Bioscience*, 625 F.3d at 1364. In this case, current patent ownership is

13  readily discernable and dictates the appropriate parties for Counts III–XII of the First

14  Amended Complaint (Doc. 46). The concept of apportionment of harm and the

15  Restatement (Second) of Torts § 433B(3) are inapplicable.

16      RPI may regain title in the Tomkow Patents if the court in the Second Barton Case

17  deems the assignment of the Tomkow Patents to RComm to be fraudulent. GoDaddy

18  cites Rule 19(a)(1)(B)(ii) to support its argument that this possibility makes RPI an

19  indispensable party to the litigation. (Doc. 69 at 10). However, only parties that have a

20  stake in the litigation may be joined; there needs to be a case or controversy between the

21  adverse parties. *See Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1373

22  (Fed. Cir. 2011) ("A party has standing to bring an action under the Declaratory

23  Judgment Act if an actual controversy exists . . . which is the same as an Article III case

24  or controversy.") (internal quotation marks omitted) (citing *Teva Pharm. USA, Inc. v.*

25  *Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007)). As discussed above, if

26  RPI and RMail have no ownership in the Tomkow Patents, then GoDaddy has no case or

27  controversy with either of them regarding the Tomkow Patents, and they cannot be joined

28

- 10 -

1    as defendants. Therefore, Rule 19(a)(1)(B)(ii), which dictates when a party must be
2    joined, is inapplicable.
3        A party does not have standing to pursue a patent infringement claim when that
4    party's interest in the patent-in-suit is contingent upon the vesting of such interest by
5    pending judicial action. *Nolen v. Lufkin Indus., Inc.*, 469 F. App'x 857, 860 (Fed. Cir.
6    2012) ("a claim for patent infringement does not arise under the patent laws when it
7    requires judicial action to vest title in the party alleging infringement"). Therefore, a
8    plaintiff in a declaratory action has no standing to sue a defendant whose title in the
9    patents-in-suit is contingent on the resolution of pending litigation. *See id.* Moreover,
10   jurisdictional problems cannot be solved after the commencement of an action. *Abraxis*
11   *Bioscience*, 625 F.3d at 1364. Even if the court in the Second Barton Case determines
12   that the assignment of the Tomkow Patents to RComm was fraudulent and RPI regains
13   title, GoDaddy is still unable to cure the lack of subject-matter jurisdiction for Counts
14   III–XII against RPI and RMail because subject-matter jurisdiction was lacking at the
15   outset.
16       C.    **RMail's Refusal to Covenant Not to Sue**
17       GoDaddy alleges that RMail has refused to grant a covenant not to sue for
18   infringement of the Tomkow Patents in exchange for RMail's release from the present
19   litigation, and that that refusal gives evidence of a controversy between GoDaddy and
20   RMail. (Doc. 69 at 11). To support this assertion, GoDaddy cites *Arkema Inc. v.*
21   *Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) ("[The patentee] has declined
22   to grant [plaintiff] a covenant not to sue on the [asserted] patents, which further suggests
23   that there is an active and substantial controversy between the parties regarding their
24   legal rights with respect to those patents."). (*Id.*) However, refusal to grant a covenant not
25   to sue can only be evidence of a case or controversy when it is *the patentee* refusing to
26   grant the covenant. *See id.* In the case at hand, RMail has no title or interest in the
27   Tomkow Patents, and therefore, it has no reason to grant such a covenant. Therefore,

RMail's alleged refusal to grant a covenant not to sue has no weight on whether there is a case or controversy between GoDaddy and RMail.

**IV.     Conclusion**

The Court finds that GoDaddy has failed to show that RPI or RMail has any right, title, or interest in the Tomkow Patents. Accordingly, the Court further finds that GoDaddy has failed to establish that it has standing to sue RPI and RMail for declarations of noninfringement and invalidity of the Tomkow Patents, and therefore, the Court lacks subject-matter jurisdiction over Counts III–XII of the First Amended Complaint against RPI and RMail.

For the foregoing reasons,

**IT IS ORDERED** that Defendants RPost International Limited's and RMail Limited's Motion to Dismiss Counts III–XII of the First Amended Complaint (Doc. 56) is GRANTED.

**IT IS FURTHER ORDERED** that GoDaddy's claims in Counts III–XII of the First Amended Complaint against RPost International Limited and RMail Limited are DISMISSED WITHOUT PREJUDICE. GoDaddy's claims in Counts III–XII of the First Amended Complaint against the other Defendants remain.

Dated this 9th day of December, 2014.

James A. Teilborg
Senior United States District Judge