WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GoDaddy.com, LLC, | No. CV-14-00126-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| RPost Communications Limited, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Counts XIII–XVI of the First Amended Complaint under Fed. R. Civ. P. 12(b)(1). (Doc. 72). Also pending is Defendants' Motion for Leave to File First Amended Answer to Counts XIII-XVI of the First Amended Complaint (Doc. 100). The Court now rules on the motions.

## I.      Background

GoDaddy.com, LLC ("GoDaddy") brought this declaratory judgment action against Defendants RPost Holdings, Inc. ("RPost Holdings"), RPost International Limited ("RPost International"), RMail Limited ("RMail"), and RPost Communications Limited ("RComm") (collectively, "RPost"), seeking, among other things, declarations of invalidity and noninfringement of various patents (the "Patents-in-Suit"), including U.S. Patent Nos. 6,182,219 ("the '219 patent") and 6,571,334 ("the '334 patent") (collectively, "the RMail Patents") in Counts XIII–XVI of Plaintiff's First Amended Complaint ("FAC"). (Doc 46 at 32–38). RPost seeks dismissal of Counts XIII–XVI of the FAC, which involve the RMail Patents, under Federal Rule of Civil Procedure ("Rule") 12(b)(1) arguing that there is no case or controversy between the parties over the RMail

Patents. GoDaddy asserts that the Court has subject-matter jurisdiction over Counts XIII–XVI, and that RPost should be sanctioned under 28 U.S.C. § 1927 for vexatiously filing the instant motion. (Doc. 84 at 14).

**A.    RPost's Assertion of the Patents-in-Suit against GoDaddy**

RPost first contacted GoDaddy via email on July 17, 2013 ("the Email") and advised of its belief that GoDaddy was infringing some of RPost's patents, specifically U.S. Patent Nos. 8,209,389 ("the '389 patent"), 8,224,913 ("the '913 patent"), 8,161,104 ("the '104 patent"), 8,468,198 ("the '198 patent"), and 8,468,199 ("the '199 patent") (collectively "the Tomkow Patents"). (Doc. 46-4). RPost alleged in the Email that GoDaddy's "business processes and electronic messaging and document operations" infringed RPost's patents. (Doc. 46-4 at 3). The Email also suggested that GoDaddy "review the RPost patents noted below for a more complete description of RPost patented technologies and review these in the context of your technology operations." (*Id.*) The Email then listed seventeen patents owned by RPost including the Tomkow Patents, RMail Patents, and others, with no attention drawn to any particular patent in the list. (*Id.* at 3–4).

In a letter on October 4, 2013 ("the Letter"), RPost further asserted the Tomkow Patents by providing claim charts "identifying certain claims of certain patents and [GoDaddy's] infringing conduct." (Doc. 46-5 at 4). RPost brought specific attention to GoDaddy's "Express Email Marketing" product and service. (*Id.*) Only claims from the Tomkow Patents were analyzed, but RPost advised GoDaddy that "[i]t is likely that [GoDaddy's] products and services are infringing other claims of RPost's patents." (*Id.*) RPost provided a comprehensive list of patents owned by RPost at the end of the Letter, which included foreign and U.S. patents, the Tomkow Patents, RMail Patents, and pending patent applications, with no attention drawn to any specific patent.

On October 22, 2013, an RPost representative named Jerry Silver called GoDaddy's Associate General Counsel for Intellectual Property, Karl Fazio, telephonically to discuss the Email and the Letter ("the Phone Call"). (Doc. 84-2 at 3).

1   Silver accused GoDaddy of infringing RPost's patents and brought up RPost's past
2   litigation, indicating that RPost is not afraid to litigate in order to enforce its patents. (*Id.*
3   at 4). Silver and Fazio discussed RPost's patents, but GoDaddy has provided no evidence
4   that any specific patents were discussed in detail. (*See id.* at 3–4; doc. 84 at 3–4).

5         Finally, on or about November 19, 2013, RPost sent GoDaddy a PowerPoint
6   presentation ("the Presentation") entitled "Summary of Preliminary Infringement
7   Analysis." (Doc. 84 at 4). On the cover page of the Presentation, four of the Tomkow
8   Patents were listed under a heading entitled "Patents & Claims in Analysis," and the '219
9   patent (an RMail Patent), along with one Tomkow Patent and three other patents, was
10  listed under a heading entitled "Additional Recommended Review." (Doc. 84-2 at 10).
11  On the next slide of the Presentation, there was a list of many patents owned by RPost
12  with no attention drawn to any particular patent. (Doc. 84-2 at 11).

13        **B.**      **RMail's Refusal to Covenant Not to Sue**

14        On at least three occasions since GoDaddy filed its original complaint, GoDaddy
15  offered to dismiss RMail from this declaratory judgment action in exchange for RMail's
16  covenant not to sue GoDaddy for infringement of the Patents-in-Suit, including the
17  RMail Patents. (Doc. 46 at 16). Each time, RMail has refused such a covenant and has
18  remained a party in the action. (*Id.*)

19        GoDaddy asserts that all of these facts establish subject-matter jurisdiction over
20  Counts XIII–XVI of its FAC. (Doc. 84). RPost seeks dismissal of Counts XIII–XVI
21  arguing that the facts do not create a case or controversy between RPost and GoDaddy
22  over the RMail Patents, and therefore, the Court lacks subject-matter jurisdiction over
23  Counts XIII–XVI.

24  **II.**     **Legal Standard**

25        **A.**      **Rule 12(b)(1)**

26        "The party asserting jurisdiction has the burden of proving all jurisdictional facts."
27  *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt*
28  *v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the court

1    presumes lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v.*
2    *Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). The defense of lack of
3    subject-matter jurisdiction may be raised at any time by the parties or the court. *See* Fed.
4    R. Civ. P. 12(h)(3). A Rule 12(b)(1) motion to dismiss "for lack of subject matter
5    jurisdiction may either attack the allegations of the complaint or may be made as a
6    'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill*
7    *Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

8    In resolving a "speaking motion" or "factual attack" under Rule 12(b)(1), once the
9    moving party has offered affidavits or other evidence disputing the allegations in the
10   complaint, the nonmoving party must submit sufficient evidence to satisfy its burden of
11   establishing that the court does have subject-matter jurisdiction over the dispute. *St. Clair*
12   *v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In a factual 12(b)(1) challenge, the
13   court is not limited to the allegations in the pleadings if the jurisdictional issue is
14   separable from the merits of the case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th
15   Cir. 1987). Instead, the court may view evidence outside the record, and no presumptive
16   truthfulness attaches to the complaint's allegations that bear on the subject-matter
17   jurisdiction of the court. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).
18   Indeed, "the district court is . . . free to hear evidence regarding jurisdiction and to rule on
19   that issue prior to trial, resolving factual disputes where necessary." *Id.* However, if the
20   court resolves a Rule 12(b)(1) motion on declarations alone without an evidentiary
21   hearing, it must accept the complaint's factual allegations as true. *McLachlan v. Bell*, 261
22   F.3d 908, 909 (9th Cir. 2001).

23   **B.    Declaratory Judgment Jurisdiction in Patent Infringement Cases**

24   A court has subject-matter jurisdiction under the Declaratory Judgment Act if "the
25   facts alleged, under all the circumstances, show that there is a substantial controversy,
26   between parties having adverse legal interests, of sufficient immediacy and reality to
27   warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*,
28   549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S.

- 4 -

270, 273 (1941)). In patent infringement cases, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Id.*

There is no bright-line rule as to whether a set of facts satisfies the Article III case-or-controversy requirement for a declaratory judgment action. *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1376 (Fed. Cir. 2012). In the patent context, "a declaratory judgment plaintiff must allege an affirmative act by the patentee relating to the enforcement of his patent rights." *Id.* at 1377 (citing *Sandisk*, 480 F.3d at 1380–81). The Court must analyze all of the circumstances to determine whether the controversy is "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and [whether] it [is] 'real and substantial' and 'admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).

## III.    Discussion

GoDaddy asserts in Counts XIII–XVI of the FAC that RPost has affirmatively asserted the RMail Patents sufficiently against GoDaddy to create a justiciable controversy. (Doc. 84 at 6–13). The Court must analyze all of the circumstances to determine whether a justiciable controversy exists. *MedImmune*, 549 U.S. at 127.

### A.    RPost's Pre-Suit Communications to GoDaddy

GoDaddy argues that RPost's pre-suit communications to GoDaddy asserting its patent rights in the RMail Patents provide strong evidence of a justiciable controversy.

(*See* Doc. 84 at 9–10). However, "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a definite and concrete dispute." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) (internal quotation marks omitted).

Simply listing a patent among numerous other patents in pre-suit communications from a patent owner to a potential infringer is insufficient to establish a justiciable controversy. In *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 U.S. Dist. LEXIS 7446 (N.D. Cal. Jan. 17, 2013), the plaintiff had filed a declaratory judgment for patent noninfringement and invalidity, *id.* at *1–2, after the defendant sent four pre-suit communications to the plaintiff. *Id.* at *9–13. The defendant argued that these communications did not establish a justiciable controversy over one of the patents-at-issue, and thus, the court lacked subject-matter jurisdiction under the Declaratory Judgment Act. *Id.* at *15. The court held that the first two of the four pre-suit communications "certainly [were] not . . . sufficient to show a justiciable controversy" because "[n]either specifically focused on the [patent-at-issue], but listed it among numerous other patents held by Defendant." *Id.* at *30. Similarly, in the declaratory judgment case *MIS Scis. Corp. v. RPost Commc'ns. Ltd.*, Case No. 14-cv-00376-VC, 2014 U.S. Dist. LEXIS 100225 (N.D. Cal. July 22, 2014), the court held that there was no justiciable controversy over some of the patents-in-suit because the defendant "did not reference these patents in the body of its emails to [the plaintiff]; nor did it include them in the claims analysis chart it sent to [the plaintiff]; nor has [the plaintiff] alleged that [the defendant] took any other affirmative act to enforce these patents." *Id.* at *6–7. The defendant's only reference to the subject patents-in-suit in its communications to the plaintiff were in a list of the defendant's patents appended to the communications, which was not enough to establish a justiciable controversy. *Id.*

On the other hand, little pre-suit communication between the declaratory judgment plaintiff and defendant is required in order to establish a justiciable controversy. *See*

1  *Hewlett-Packard*, 587 F.3d at 1364. In *Hewlett-Packard*, a patent noninfringement and

2  invalidity declaratory judgment action, the defendant had written a letter to the plaintiff

3  drawing attention to one of the defendant's patents and one of the plaintiff's products

4  which may have infringed that patent. *Id.* at 1360. The letter requested that the plaintiff

5  discuss the situation with the defendant, giving a two-week deadline for the plaintiff to

6  respond. *Id.* The letter also asked that the plaintiff refrain from initiating litigation. *Id.*

7  The plaintiff responded to the letter requesting a mutual covenant not to sue for a period

8  of 120 days, but the defendant responded asserting that the plaintiff had no evidence to

9  support a declaratory judgment action, and then further requested a discussion of the

10  patent. *Id.* Neither letter from the defendant contained any claim charts comparing the

11  asserted patent and the alleged infringing product. *Id.* at 1361. Even so, the court held

12  that there was subject-matter jurisdiction because the defendants "took the affirmative

13  step of twice contacting [the plaintiff] directly, making an implied assertion of its rights

14  under the . . . patent against [the plaintiff's] Blade Server products, and [the plaintiff]

15  disagreed." *Id.* at 1364. Thus, the defendant's conduct could "be reasonably inferred [by

16  the plaintiff] as intent to enforce a patent," which created declaratory judgment

17  jurisdiction. *Id.* at 1363.

18      In the case at hand, the RMail Patents are listed along with numerous other RPost

19  patents, both foreign and domestic, in the Email and the Letter with no specific attention

20  drawn to them. (*See* Docs. 46-4, 46-5). RPost suggested in the Email that GoDaddy

21  "review the RPost patents noted below [in the list] for a more complete description of

22  RPost patented technologies and review [them] in context of [GoDaddy's] technology

23  operations considering suggestions noted above." (Doc. 46-4 at 3). Similarly, RPost

24  provided claim charts for the Tomkow Patents in the Letter and asserted that "it is likely

25  that [GoDaddy's] products and services are infringing other claims of RPost's patents,"

26  (doc. 74-2 at 4). RPost directed GoDaddy to a link of all of RPost's patents to review, and

27  again there was no particular attention drawn to the RMail Patents. (*Id.*) Therefore,

28  without more than the lists of patents in the Email and Letter, there is no justiciable

1    controversy regarding either of the RMail Patents.

2        GoDaddy asserts that the Phone Call further gives evidence of a justiciable
3    controversy regarding the RMail Patents. (Doc. 84 at 9–10). According to GoDaddy's
4    Associate General Counsel for Intellectual Property, Fazio, the GoDaddy and RPost
5    representatives "discussed RPost's assertions that GoDaddy's Express Email Marketing
6    products infringed RPost's patents, including the RMail Patents." (Doc. 84-2 at 3–4).
7    However, GoDaddy has provided no evidence that RPost or GoDaddy analyzed any
8    specific patents in the Phone Call. Without specific attention being drawn to the RMail
9    Patents, the content of the Phone Call is of little help in the analysis of whether there is a
10   justiciable controversy over the RMail Patents.

11       In the Presentation entitled "Summary of Preliminary Infringement Analysis,"
12   however, RPost conspicuously listed one of the RMail Patents, the '219 patent, as one of
13   five patents for "Additional Recommended Review" on the title slide. (Doc. 84-2 at 10).
14   RPost also listed one of the Tomkow Patents, the '199 patent, in the list for "Additional
15   Recommended Review." (*Id.*) RPost had explicitly asserted the Tomkow Patents by
16   providing claim charts for them to GoDaddy. Therefore, listing the '219 patent alongside
17   one of the Tomkow Patents reasonably indicates to GoDaddy that RPost also intended to
18   assert the '219 patent.  Accordingly, this fact weighs in favor of finding subject-matter
19   jurisdiction over the Counts XIII and XV involving the '219 patent.

20       Because RPost provided no claim charts for any of the RMail Patent claims, (*see*
21   doc. 84 at 10), RPost argues that the Court lacks subject-matter jurisdiction over the
22   counts involving the RMail Patents. (Doc. 72 at 8). However, claim charts are not
23   necessary to find a justiciable controversy in a declaratory judgment action for patent
24   noninfringement and invalidity as long as the other circumstances in the case sufficiently
25   establish a concrete controversy between the parties. *See Hewlett-Packard*, 587 F.3d at
26   1364 (finding subject-matter jurisdiction despite the lack of claim charts in the
27   correspondence between the parties).

28       RPost argues that regardless of whether the RMail Patents were specifically

- 8 -

asserted against GoDaddy, RPost did not identify any of GoDaddy's products that infringe the RMail Patents. (Doc. 72 at 7). To support this assertion, RPost cites *Essai, Inc. v. Delta Design, Inc.*, No. C 13-02356 JSW, 2013 U.S. Dist. LEXIS 170450, at *9–10 (N.D. Cal. Dec. 2, 2013) ("despite the lengthy correspondence between the two companies, none of the letters [from Delta Design] identify any particular product sold or offered for sale by Essai. Nor does Essai identify any particular product in its complaint for declaratory relief . . . . Accordingly, the Court grants Delta Design's motion to dismiss this claim for lack of jurisdiction."). In this case, however, RPost has specifically identified GoDaddy's product, "Express Email Marketing," (Doc. 46-5 at 4), and GoDaddy's "business processes and electronic messaging and document operations" as potentially infringing the Patents-in-Suit. (Doc. 46-4 at 3). In GoDaddy's FAC, it specifically refers to the Express Email Marketing product as well. (Doc. 46 at 3, 14, 15). Therefore, RPost's argument that infringing products were not identified is misplaced.

RPost also argues that because GoDaddy did not assert noninfringement and invalidity claims for the other three patents listed on the title page of the Presentation, that indicates that there is no controversy over the '219 patent. (Doc. 87 at 3). This argument is unpersuasive. RPost's listing of the patents on the title page of the Presentation, in conjunction with other factors, may establish subject-matter jurisdiction for all such patents. GoDaddy is free to choose which patents to litigate, as long as GoDaddy can establish that a justiciable controversy exists over each patent at issue.

Because RPost never made an affirmative act to specifically assert the '334 patent, but only listed it among numerous other patents in the communications to GoDaddy, the Court finds that GoDaddy has failed to establish that there is a justiciable controversy over the '334 patent. Regarding the '219 patent, however, RPost drew attention to it by conspicuously listing it under "Additional Recommended Review" on the title page of the Presentation alongside one of the Tomkow Patents, allowing the inference that RPost believed GoDaddy was infringing the '219 patent. However, this fact alone may not be enough to establish subject-matter jurisdiction. Therefore, the Court will consider other

factors present in the case to determine whether there is subject-matter jurisdiction over the '219 patent.

**B.      RPost's Litigious Nature**

GoDaddy argues that RPost's assertion of its patents against GoDaddy's competitors bolsters its claims that the Court has subject-matter jurisdiction over Counts XIII–XVI in the FAC involving the RMail Patents. (Doc. 84 at 11–12). Indeed, "[p]rior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008).

When a patent owner has sued competitors of the declaratory judgment plaintiff regarding technology similar to the plaintiff's technology, and the plaintiff has received infringement notices from the patent owner, those facts weigh in favor of finding subject-matter jurisdiction. In *Micron Technology, Inc. v.  Mosaid Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008), Mosaid sent patent infringement warning letters to Micron and the three other top manufacturers of dynamic random access memory (DRAM) chips. When the four major DRAM chip manufacturers did not take licenses from Mosaid, Mosaid began suing them using a "systematic licensing and litigation strategy." *Id.* at 899. Because Micron knew that it would be targeted soon, it brought a declaratory judgment action against Mosaid. *Id.* at 900. The court found that there was subject-matter jurisdiction for the declaratory judgment action, with one of the determining factors being Micron's "behavioral observations" of Mosaid enforcing its patents. *Id.* at 901.

In this case, RPost has been known to assert its patents against GoDaddy's competitors, such as Constant Contact and Amazon.com, for very similar technology covered by the RMail Patents and other Patents-in-Suit. *See Amazon.com, Inc.*, 2:10-cv-258-JRG, 2014 U.S. Dist. LEXIS 25597 (E.D. Tex. Jan. 30, 2014). Additionally, RPost's representative brought attention to the lawsuit against Constant Contact in the Phone Call with GoDaddy's representative, Fazio, and emphasized that RPost is not afraid to litigate to enforce its patents. (Doc 84-2 at 4). Fazio "understood at the time that RPost's suit

against Constant Contact included many of the same RPost patents asserted in RPost's demands to GoDaddy, including one of the RMail Patents (the '219 patent)." (*Id.*) RPost's litigation against GoDaddy's competitors enforcing the Patents-in-Suit, including the one RMail Patent, and RPost bringing attention to its willingness to litigate, are factors that weigh in favor of finding that the Court has subject-matter jurisdiction over the '219 patent.

### C.    RMail's Refusal to Covenant Not to Sue

GoDaddy argues that RMail's refusal to covenant not to sue for infringement of the Patents-in-Suit, including the RMail Patents, is evidence that there is a justiciable controversy over the RMail Patents. (Doc. 84 at 12–13). The case law on this subject supports GoDaddy's argument. In *Arkema Inc. v. Honeywell International, Inc.*, 706 F.3d 1351 (Fed. Cir. 2013), Arkema sued Honeywell in a declaratory judgment action asserting patent noninfringement and invalidity. *Id.* at 1355. In its finding that there was subject-matter jurisdiction for a declaratory judgment action, the court in *Arkema* determined that defendant's refusal to covenant not to sue over the patents-in-suit, among other factors, "further suggest[ed] that there [was] an active and substantial controversy between the parties regarding their legal rights with respect to those patents." *Id.* at 1358. This factor in determining the existence of subject-matter jurisdiction in a declaratory judgment patent infringement case is not dispositive, however, and must be taken into consideration in conjunction with other circumstances of the case. *Prasco*, 537 F.3d at 1341 ("though a defendant's failure to sign a covenant not to sue is one circumstance to consider in evaluating the totality of the circumstances, it is not sufficient to create an actual controversy—some affirmative actions by the defendant will also generally be necessary.").

Because RPost has affirmatively asserted the '219 patent by listing it on the title page of the Presentation, the Court finds that the factor involving RMail refusing to grant a covenant not to sue is relevant and weighs in favor of a finding of subject-matter jurisdiction regarding Counts XIII and XV of the FAC involving the '219 patent.

In sum, based on the analysis of all of the circumstances in this case, the Court finds that there is subject-matter jurisdiction over Counts XIII and XV involving the '219 patent. The '219 patent was conspicuously listed on the title page of the Presentation to draw attention to it, RPost has shown litigious behavior toward GoDaddy and GoDaddy's competitors regarding similar products to GoDaddy's allegedly infringing products, and RMail has refused to grant a covenant not to sue GoDaddy on the RMail Patents. Like the facts in *Hewlett-Packard*, the facts in this case show that defendant's conduct could "be reasonably inferred . . . as intent to enforce a patent." *Hewlett-Packard* 587 F.3d at 1363. Therefore, there is a justiciable controversy between RPost and GoDaddy regarding the '219 patent.

**IV.   GoDaddy's Request for Sanctions under 28 U.S.C. § 1927**

GoDaddy alleges that RPost's filing of the instant motion to dismiss is vexatious because RPost could have filed it with its other motions to dismiss, and GoDaddy argues that all of RPost's motions to dismiss in this case are meritless. (Doc. 84 at 14). Therefore, GoDaddy requests that RPost be sanctioned under 28 U.S.C. § 1927 (2012).

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  In short, "[s]ection 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 1999). However, sanctions may be imposed under § 1927 with only a determination of bad faith. *Id.* at 1118. Courts "'assess an attorney's bad faith under a subjective standard. Knowing or reckless conduct meets this standard.'" *Id.* (quoting *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120 1121–22 (9th Cir. 1991)). "[W]hen an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing the opponent," sanctions under § 1927 may be appropriate. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (quoting *Estate of Blas v. Winkler*, 792

1  F.2d 858, 860 (9th Cir. 1986)).

2     GoDaddy first argues that RPost's three motions to dismiss, including the instant

3  motion are meritless, and therefore, vexatious. (Doc. 84 at 14). However, RPost has

4  asserted valid arguments in each of its motions to dismiss. In fact, RPost has prevailed on

5  its Motion to Dismiss Count II of Plaintiff's First Amended Complaint Pursuant to Fed.

6  R. Civ. P. 12(b)(6), (Doc. 55), and on Defendants RPost International Limited's and

7  RMail Limited's Motion to Dismiss Counts III–XII of the First Amended Complaint

8  Under Fed. R. Civ. P. 12(b)(1), (Doc. 56). Also, in the instant motion, RPost is successful

9  in moving to dismiss Counts XIV and XVI of the FAC, and it asserted reasonable

10  arguments challenging subject-matter jurisdiction over Counts XIII and XV of the FAC.

11  Therefore, RPost's motions to dismiss in this case are not meritless.

12     GoDaddy further argues that the fact that RPost filed the instant motion about two

13  months after filing its other two motions to dismiss strengthens its argument that RPost's

14  conduct is vexatious. (Doc. 84 at 14). However, the defense of lack of subject-matter

15  jurisdiction may be raised at any time by the parties or the court. *See* Fed. R. Civ. P.

16  12(h)(3). Therefore, RPost's timing in the filing of the instant motion is not inappropriate.

17     The Court finds that GoDaddy has failed to establish that RPost's conduct was

18  unreasonable and vexatious.

19  **V.     Defendants' Motion for Leave to Amend Answer**

20     RPost has moved for leave to file an amended answer to GoDaddy's First

21  Amended Complaint. (Doc. 100 at 2). Because the Court is dismissing Counts XIV and

22  XVI of the First Amended Complaint, but RPost has already answered those counts,

23  RPost's Answer on file no longer conforms to the counts at issue in this case.

24  Accordingly, RPost must file an Amended Answer that responds only to those counts that

25  survive this motion. This renders RPost's motion for leave to file an amended answer

26  moot because RPost's Amended Answer may incorporate any changes that RPost desires.

27  **VI.    Conclusion**

28     For the foregoing reasons,

- 13 -

1    **IT IS ORDERED** that RPost's Motion to Dismiss Counts XIII–XVI of the First
2    Amended Complaint (Doc. 72) is granted in part and denied in part.

3    **IT IS FURTHER ORDERED** that Counts XIV and XVI of the First Amended
4    Complaint are dismissed without prejudice.

5    **IT IS FURTHER ORDERED** that to the extent that GoDaddy requests sanctions
6    against RPost under 28 U.S.C. § 1927, that request is denied.

7    **IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File First
8    Amended Answer to Counts XIII-XVI of the First Amended Complaint (Doc. 100) is
9    denied as moot.

10   **IT IS FURTHER ORDERED** that RPost shall file an Amended Answer to the
11   First Amended Complaint on or before December 17, 2014.

12   Dated this 9th day of December, 2014.

James A. Teilborg
Senior United States District Judge

- 14 -