WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GoDaddy.com LLC, | No. CV-14-00126-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| RPost Communications Limited, et al., | |
| Defendants. | |

Pending before the Court are Plaintiff GoDaddy.com LLC ("GoDaddy")'s Motion for Attorneys' Fees and Related Non-Taxable Expenses, (Doc. 353), Motion to Seal and Notice of Lodging Certain Exhibits to GoDaddy's Motion for Attorneys' Fees and Related Non-Taxable Expenses, (Doc. 354), and Motion for the Court to Review the Clerk's Taxation of Costs, (Doc. 375). Also pending before the Court are Defendants'[1] Motion for Attorneys' Fees and Related Non-Taxable Expenses, (Doc. 356), and two motions to seal, (Docs. 360, 372). The Court now rules on the motions.

## I.     Background

GoDaddy filed this declaratory judgment action against RPost seeking, among other things, damages for fraudulent misrepresentation and judicial declarations of invalidity, non-infringement, and unenforceability for patent misuse of various patents

---

[1] Defendants are RPost Communications Ltd.; RPost Holdings, Inc.; RPost International Ltd.; and RMail Ltd. Defendants are collectively referred to as "RPost."

(the "Asserted Patents")[2] after RPost attempted to enforce those patents against GoDaddy. (Doc. 46 at 38). GoDaddy claimed that RPost engaged in fraudulent misrepresentation because RPost "represented unclouded ownership in and rights to enforce" the Asserted Patents. (*Id.* at 16–17). RPost counterclaimed, asserting that GoDaddy was liable for direct infringement of the Asserted Patents. (Doc. 108 at 20–27).

The first round of dispositive motions was a success for RPost as the Court dismissed Count II of GoDaddy's First Amended Complaint ("FAC") for patent misuse. (Doc. 105). The second round also proved fruitful for RPost, as the Court dismissed GoDaddy's remaining declaratory judgment counts against RMail Ltd. and RPost International Ltd. (Doc. 106). The third round was mildly rewarding for RPost, as the Court dismissed two of GoDaddy's declaratory judgment counts in their entirety. *See* (Doc. 107) (dismissing Counts XIV and XVI of GoDaddy's FAC).

At summary judgment, the Court held that the asserted claims of the Asserted Patents were invalid under 35 U.S.C. § 101. (Doc. 344 at 59). The Court also held that RPost was entitled to summary judgment on Count I of GoDaddy's FAC for fraudulent misrepresentation. (*Id.*) As the remaining counts had been adjudicated or were mooted by the invalidity declarations, judgment was entered accordingly. (Docs. 344 at 60; 345).

## II. Legal Standards

### A. Attorneys' Fees

Pursuant to the "American Rule," a litigant's "attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967). The

---

[2] The Asserted Patents are (1) U.S. Patent No. 8,224,913 (filed July 17, 2012) (the "'913 Patent"); (2) U.S. Patent No. 8,209,389 (filed June 26, 2012) (the "'389 Patent"); (3) U.S. Patent No. 8,161,104 (filed April 17, 2012) (the "'104 Patent"); (4) U.S. Patent No. 8,468,198 (filed June 18, 2013) (the "'198 Patent"); (5) U.S. Patent No. 8,468,199 (filed June 18, 2013) (the "'199 Patent"); and (6) U.S. Patent No. 6,182,219 (filed January 30, 2001) (the "'219 Patent"). The '104, '389, '913, '198, and '199 Patents are referred to herein as the "Tomkow Patents." The '219 Patent is referenced as the "Feldbau Patent."

1  reasons for the rule are that,

2      since litigation is at best uncertain one should not be penalized for merely
3      defending or prosecuting a lawsuit, and that the poor might be unjustly
       discouraged from instituting  actions to vindicate their rights if the penalty
4      for losing included the fees of their opponents' counsel. Also, the time,
       expense, and difficulties of proof inherent in litigating the question of what
5      constitutes reasonable attorneys' fees would pose substantial burdens for
       judicial administration.
6

7  *Id.* at 718. The parties invoke several exceptions to the American Rule.

8          **1.     The Patent Act of 1952**

9      The statute governing attorneys' fees in patent litigation is straightforward: "[t]he

10 court in exceptional cases may award reasonable attorney fees to the prevailing party." 35

11 U.S.C. § 285. Thus, the statute "imposes one and only one constraint on district courts'

12 discretion to award attorney's fees in patent litigation: The power is reserved for

13 'exceptional' cases." *Octane Fitness, LLC v. ICON Health & Fitness*, 134 S. Ct. 1749,

14 1755–56 (2014). An "exceptional" case is "simply one that stands out from others with

15 respect to (1) the substantive strength of a party's litigating position (considering both the

16 governing law and the facts of the case) or (2) the unreasonable manner in which the case

17 was litigated." *Id.* at 1758.

18     "The movant must show exceptionality by preponderant evidence," *Site Update*

19 *Sols., LLC v. CBS Corp.*, 639 F. App'x 634, 636 (Fed. Cir. 2016), and the Court enjoys

20 considerable discretion in determining whether to "award fees in the rare case in which a

21 party's unreasonable conduct—while not necessarily independently sanctionable—is

22 nonetheless so 'exceptional' as to justify an award of fees," *Octane Fitness*, 134 S. Ct. at

23 1757; *see, e.g.*, *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748

24 (2014); *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 482 (Fed. Cir.

25 2016). When reviewing a case for "exceptionality," the Court should consider "the

26 totality of the circumstances," such as the following non-exclusive list of factors:

27 "'frivolousness, motivation, objective unreasonableness (both in the factual and legal

28 components of the case) and the need in particular circumstances to advance

- 3 -

considerations of compensation and deterrence.'" *Octane Fitness*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Further, "the conduct of the parties is a relevant factor under *Octane*'s totality-of-the-circumstances inquiry[.]" *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (citing *Octane Fitness*, 134 S. Ct. at 1756); *see also Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1415 (Fed. Cir. 2004) (finding that a district court did not abuse its discretion in denying fees under § 285 "because all of the parties had conducted themselves without the decorum required when practicing before a federal court").

Notably, "it is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting *Octane Fitness*, 134 S. Ct. at 1756) (emphasis in original). In other words, "[a] party's position on issues of law ultimately need not be correct for them to not 'stand out,' or be found reasonable.'" *Id.*; *see also Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) ("Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous.").

### 2.   Arizona Revised Statute § 12-349

Under Arizona state law,

> Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:
>
> 1.   Brings or defends a claim without substantial justification.
>
> 2.   Brings or defends a claim solely or primarily for delay or harassment.
>
> 3.   Unreasonably expands or delays the proceeding.
>
> 4.   Engages in abuse of discovery.

Ariz. Rev. Stat. § 12-349(A). Furthermore, "[f]or the purposes of this section, 'without substantial justification' means that the claim or defense is groundless and is not made in good faith." *Id.* § 12-349(F).

### 3.    The Court's Inherent Power

Finally, "inherent" in the power of the Court is the authority to award attorneys' fees against a party or its counsel in three "narrowly defined circumstances." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). First, under the "common fund exception," the Court may award attorneys' fees "to a party whose litigation efforts directly benefit others." *Id.* (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975)). Second, the Court may impose attorneys' fees as a sanction for "'willful disobedience of a court order.'" *Id.* (quoting *Alyeska Pipeline Serv.*, 421 U.S. at 258).

Third, and of most relevance here, the Court may assess attorneys' fees as a sanction "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" *Octane Fitness*, 134 S. Ct. at 1758 (quoting *Alyeska Pipeline Serv.*, 421 U.S. at 258–59). "In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order[.]" *Chambers*, 501 U.S. at 46 (internal citations and quotations omitted). Moreover, in addition to attorneys' fees, the Court may invoke its inherent power "to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute" provided that the non-prevailing party acted in bad faith or fraudulently. *Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008); *see iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011) (noting that although district courts cannot impose expert fees under § 285, "a court can invoke its inherent power to award such fees in exceptional cases based upon a finding of bad faith" (citations omitted)).

### B.    Sealing Documents

It has long been recognized that the public has a general right of access "to inspect

and copy . . . judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right of access extends to all judicial records except those that have "traditionally been kept secret for important policy reasons," namely grand jury transcripts and certain warrant materials. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Nevertheless, "the common-law right of inspection has bowed before the power of a court to insure that its records" do not "serve as . . . sources of business information that might harm the litigant's competitive standing." *Nixon*, 435 U.S. at 598.

"Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotation omitted). A party seeking to seal a judicial record bears the burden of overcoming this presumption by either meeting the "compelling reasons" standard if the record is a dispositive pleading, or the "good cause" standard if the record is a non-dispositive pleading. *Id.* at 1180.[3] In this case, the attached documents all relate to the

---

[3] In a recent opinion, a panel of the Ninth Circuit shifted from the dispositive/non-dispositive analysis to a review of the relationship between the underlying motion and the merits of the case. *See Ctr. for Auto Safety v. Chrysler Grp, LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016) ("*Auto Safety*"). Specifically, *Auto Safety* held that public access to records attached to a motion that is "more than tangentially related to the merits of a case" will be reviewed under the "compelling interest" standard, while documents attached to a motion that does not have a "tangential" relationship to the merits of a case may be sealed if "good cause" is shown. *Id.* However, because *Auto Safety* was only a panel decision and not *en banc*, prior Ninth Circuit precedent centralizing the inquiry on whether the record is dispositive or non-dispositive was not overruled. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). Circuit Judge Sandra S. Ikuta stated as much in her Dissent:

> According to the majority, the district court here erred because it "relied on language in our cases which provides that when a party is attempting to keep records attached to a 'non-dispositive' motion under seal, it need only show 'good cause.'" Maj. op. at 5. This comes as a surprise, because the "language in our cases" constitutes binding precedent. But no matter, the majority invents a new rule, namely that a party cannot keep records under seal if they are attached to any motion that is "more than tangentially related to the merits of a case," Maj. op. at 17, unless the

parties' motions for attorneys' fees which are non-dispositive.

The less-stringent "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (quotation omitted); *see* Fed. R. Civ. P. 26(c). Thus, "[b]road allegations of harm, unsubstantiated by specific examples of articulated reasoning" does not overcome the strong presumption in favor of public access. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

In the business context, a "trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (quoting Restatement (First) of Torts § 757, cmt. B (1939)). As this Court has observed, "because confidentiality alone does not transform business information into a trade secret, a party alleging trade secret protection as a basis for sealing court records must show that the business information is in fact a trade secret." *PCT Int'l Inc. v. Holland Elecs. LLC*, 2014 WL 4722326, at *2 (D. Ariz. Sept. 23, 2014) (quotation omitted). In other words, "[s]imply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden." *Kamakana*, 447 F.3d at 1184.

## III.    GoDaddy's Motion for Attorneys' Fees

### A.    Arguments

Pursuant to 35 U.S.C. § 285, GoDaddy moves for an award of its attorneys' fees in the amount of $1,038,590.00. (Doc. 353 at 5). GoDaddy also requests that the Court invoke its inherent authority to award GoDaddy its expert fees in the amount of

---

party can meet the "stringent standard" of showing that compelling reasons support secrecy, Maj. op. at 8. Because this decision overrules circuit precedent and vitiates Rule 26(c) of the Federal Rules of Civil Procedure, I strongly dissent.

*Auto Safety*, 809 F.3d at 1104.

$144,480.00 in addition to $9,835.68 for other non-taxable costs. (*Id.*)[4] GoDaddy contends that it is "the prevailing party" and that this case is "exceptional" under § 285 for three reasons. First, GoDaddy maintains that RPost "advanced litigation positions and patents in this case that were completely without merit." (*Id.* at 7). Second, GoDaddy asserts that RPost and its damages expert, Gregory Smith, "advanced completely unreliable and unreasonable damages positions in both the first and second expert damages reports, despite the Court providing RPost and Smith an opportunity to cure the deficiencies." (*Id.* at 7–8). Finally, GoDaddy believes that RPost "enforced its patents here and in serial fashion elsewhere such that its enforcement campaign was advanced in a highly unreasonable manner." (*Id.* at 8).

In response, RPost does not dispute that GoDaddy is "the prevailing party" as required by § 285. *See* (Doc. 370). However, RPost disagrees that this is an "exceptional" case warranting an award of over $1,000,000.00 in attorneys' fees. (*Id.* at 6–20). RPost insists that its litigation positions and Mr. Smith's expert reports were reasonable and advanced in good faith. (*Id.*) RPost also rebuffs GoDaddy's contention that it is simply a "patent enforcement entity" because it operates a successful business that does not rely solely on licensing agreements. (*Id.* at 17–20).

The Court now reviews the "totality of the circumstances" to decide whether the "substantive strength" of RPost's litigating position or the reasonableness of its litigation conduct "stands out" from other cases, thereby making this case "exceptional." *Octane Fitness*, 134 S. Ct. at 1756.

**B.    Analysis**

     **1.    "The Prevailing Party"**

Initially, the Court must determine which party is "the prevailing party" under § 285. Because RPost does not dispute that GoDaddy is the prevailing party, *see*

---

[4] In its request for judicial review of the Clerk's taxation judgment, GoDaddy asks that the Court include any non-taxable surveillance costs that it incurred when it served the complaint on Zafar Khan, RPost's Chief Executive Officer. (Doc. 375 at 5).

(Doc. 370), and GoDaddy was successful in invalidating the asserted claims of the Asserted Patents, the Court finds that GoDaddy is "the prevailing party" under § 285, *see Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181–83 (Fed. Cir. 1996) (holding "as a matter of law, [that] a party who has a competitor's patent declared invalid meets the definition of 'prevailing party'" in the "context of patent litigation").

### 2.    The "Substantive Strength" of RPost's Litigating Position

The first prong of the *Octane Fitness* test requires the Court to review whether this case "stands out" from other cases due to the "substantive strength of [RPost's] litigating position (considering both the governing law and the facts of the case)." 134 S. Ct. at 1756. In this regard, GoDaddy primarily contends that it was unreasonable for RPost to advance "broad" claim constructions during *Markman*, despite knowing that the Asserted Patents were subject to a post-*Alice* § 101 inquiry. (Doc. 353 at 8–10). GoDaddy derides RPost for refusing to accept any of the claim limitations it proposed at *Markman*, thereby "inviting" a § 101 invalidity argument at summary judgment. (*Id.*) GoDaddy also asserts that RPost advanced inconsistent positions for several claim terms between *Markman* and summary judgment. (*Id.*)

RPost responds that it had been "anticipating" GoDaddy's invalidity argument because GoDaddy began this litigation by claiming that the Asserted Patents lacked § 101 validity in its FAC. (Doc. 370 at 8). RPost also insists that its claim constructions were reasonable in light of the claim language and prior courts' constructions of the claims. (*Id.* at 8–11). Finally, RPost disputes GoDaddy's contention that it flip-flopped on construction positions at different stages of litigation. (*Id.* at 9–10).

To begin, simply because RPost advanced a certain construction for a claim term does not mean that its litigating position was meritless. *See Raylon*, 700 F.3d at 1368 ("Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous."). GoDaddy concedes this point as it "does not contend that RPost's proposed constructions in and of themselves were raised in bad faith[.]" (Doc. 376 at 3). Rather, GoDaddy posits that a "reasonable litigant would not pursue" the

Asserted Patents given their "generic" claim language. (*Id.*)

Regardless of whether RPost's advocacy for broad claim constructions in light of *Alice* was a prudent litigation tactic, the Court construed the terms based on how they were drawn in the claim language—not according to RPost's proposed constructions. Similarly, the Court's levy of claim limitations did not hinge solely on GoDaddy's say so. As evidenced by the 139-page *Markman* order, the Court reviewed how the claim terms were drawn in the patents, while also giving *stare decisis* weight to prior courts' constructions. *See* (Doc. 219 at 27). Thus, GoDaddy's argument that RPost was unreasonable for not adopting GoDaddy's proposed claim limitations is unpersuasive. RPost's advancement of broad constructions does not demonstrate unreasonableness.[5]

To cement its position that asserting a valid, duly issued patent is unreasonable and "exceptional" due to the patent's "generic" claim language, GoDaddy cites just one case. *See* (Doc. 376 at 3–7) (citing *Edekka LLC v. 3balls.com, Inc.*, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015)); *see also* (Doc. 353 at 8–10). In *Edekka*, Judge Rodney Gilstrap of the United States District Court for the Eastern District of Texas issued an award of attorneys' fees to a party that successfully invalidated a patent that was "demonstrably weak on its face" and noted that the court "did not need the benefit of claim construction to find that the claims were directed to an abstract idea" because "no reasonable litigant could have reasonably expected success on the merits when defending against the numerous § 101 motions filed in this case." 2015 WL 9225038, at *3–4

Unlike *Edekka*, the asserted claims of the Asserted Patents—which underwent claim construction—were not "demonstrably weak" on their face.[6] As evidence of this

---

[5] Similarly, the Court does not agree with GoDaddy's non-"fair play" argument that RPost advanced "inconsistent" positions between *Markman* and summary judgment. *See* (Doc. 353 at 9–10). RPost's arguments have been reasonably consistent throughout this litigation, and to the extent RPost modified its arguments to account for the Court's *Markman* order, such adaptation was reasonable.

[6] Notably, the portions of the Court's summary judgment order to which GoDaddy cites in effort to compare this case with *Edekka* all relate to the Court's analysis regarding

fact, just four days before the Court issued its summary judgment order, Judge Denise J. Casper of the United States District Court for the District of Massachusetts denied a motion for judgment on the pleadings based on § 101 invalidity and held that several of the asserted claims of the Tomkow Patents were not invalid. *See* (Doc. 344 at 49) (citing *Sophos Inc. v. RPost Holdings, Inc.*, 2016 WL 3149649 (D. Mass. June 3, 2016)). For the reasons expressed in its summary judgment order, the Court disagrees with Judge Casper's conclusions, (*id.*); however, the fact that Judge Casper deemed several of the asserted claims to be valid *before* claim construction easily distinguishes this case from *Edekka*, where the court "did not need the benefit of claim construction[,]" 2015 WL 9225038, at *3. At the least, Judge Casper's holding weighs heavily in favor RPost when considering the "substantive strength" of its litigating position.

Furthermore, RPost received several indications that the Asserted Patents were valid prior to the Court's summary judgment order. For example, the Feldbau Patent received an Ex Parte Reexamination Certificate on June 19, 2012. (Doc. 114-11). On July 29, 2013, Judge Gilstrap summarily denied a party's § 101 summary judgment motion regarding a continuation patent of the Feldbau Patent. (Doc. 304-10 at 6). In July 2014, the Patent Trial and Appeals Board denied CBM review of several of the Tomkow Patents. *See, e.g.*, (Doc. 304-3). Finally, as noted above, Judge Casper issued an order on June 3, 2016 denying a motion for judgment on the pleadings based on § 101 invalidity as to several of the asserted claims of the Tomkow Patents. *Sophos*, 2016 WL 3149649, at *13. As discussed at length in its summary judgment order, the Court did not find these prior instances to be dispositive as to the Asserted Patents' validity—particularly those occurring before *Alice*. Nonetheless, the fact that RPost received numerous signals that the Asserted Patents were valid weighs in favor of RPost when reviewing the "substantive strength" of its litigating position.

---

whether the claims were drawn to an ineligible abstract idea. *See* (Doc. 376 at 4). As discussed below, the Court found the critical issue in this case to be whether the claims implanted an "inventive concept" to confer validity, an issue to which RPost advanced reasonable, though unsuccessful, arguments.

Finally, the issues brought up at summary judgment arose in the context of a "developing" and "evolving" area of the law. *See, e.g.*, *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 2015 WL 774655, at *2 (N.D. Ill. Feb. 24, 2015) (noting that "section 101 jurisprudence is a recently evolving and unsettled area of law as it applies particularly to software patents"). Namely, determining whether a patent drawn to an otherwise ineligible abstract idea adds an "inventive concept" to that idea has undergone considerable scrutiny in recent years. *See, e.g.*, *Synopsys, Inc. v. Mentor Graphics Corp.*, 2015 WL 4365494, *4 (N.D. Cal. July 16, 2015) (noting that "when a patent claiming an otherwise ineligible abstract idea or mental process includes in addition what has been characterized as an 'inventive concept'" is a "developing area of the law" (citations omitted)); *Gametek v. Zynga, Inc.*, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (observing that "the critical issue of inventive concept is evolving"). To be sure, just between the cut-off date for summary judgment briefing and oral argument in this case, the Federal Circuit issued at least two decisions analyzing "inventive concepts" in software patents. *See* (Doc. 344 at 9) (citing *In re TLI Commc'ns LLC Patent Litig.*, 2016 WL 2865693 (Fed. Cir. May 17, 2016); *Enfish, LLC v. Microsoft Corp.*, 2016 WL 2756255 (Fed. Cir. May 12, 2016)).[7] Here, the Court found that the asserted claims of the Asserted Patents were drawn to an abstract idea and had to determine whether the claims shoehorned an "inventive concept" that would confer validity. Ultimately, the Court held that no such inventive concept was added by the claim language. Nonetheless, RPost reasonably argued that an inventive concept existed, primarily calling attention to the credibility of the invention-produced verifiable indications and the absence of recipient involvement in the overall process. *See* (Doc. 299 at 19–22). Unlike *Edekka*, the asserted claims' invalidity under § 101 was not a predestined outcome before claim construction, and the strength of RPost's litigating position was not barren enough to make this case

---

[7] Further, as of June 7, 2016—the date on which the Court issued its summary judgment order—the Federal Circuit has issued other decisions involving computer-implemented patents and the "inventive concept" principle. *See, e.g.*, *LendingTree, LLC v. Zillow, Inc.*, 2016 WL 3974203 (Fed. Cir. July 25, 2016).

"exceptional." *See, e.g.*, *Site Update Sols. LLC v. Accor N.A., Inc.*, 2015 WL 581175, at *5–8 (N.D. Cal. Feb. 11, 2015) (finding that patentee's "interpretation of [means-plus-function] law was flawed but not so objectively unreasonable or unusual as to make this case exceptional"); *Synopsys*, 2015 WL 4365494, at *4 (finding that patentee's arguments involving § 101 were not "in any manner weak enough to make the case exceptional").

In sum, this is not a case where RPost's "infringement allegations [were] such that no reasonable litigant could reasonably expect success on the merits." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citations omitted). Accordingly, the Court concludes that the "substantive strength" of RPost's litigating position does not "stand out" from other cases to merit a finding that this case is "exceptional" under § 285.

### 3.  Reasonableness in which RPost Litigated this Case

The second prong of *Octane Fitness* requires the Court to "consider whether the case was litigated in an unreasonable manner[.]" *SFA Sys.*, 793 F.3d at 1349. In this regard, GoDaddy criticizes as unreasonable RPost's advancement of two expert damages reports issued by Mr. Smith. (Doc. 353 at 10–16). GoDaddy highlights the Court's rejection of Mr. Smith's first expert report under *Daubert* and complains that Mr. Smith's second report—which was never presented to the Court before GoDaddy's motion for attorneys' fees—did not correct the mistakes identified by the Court. (*Id.*) GoDaddy thus provides, in essence, a condensed *Daubert* motion on Mr. Smith's second report, but also proposes that a "casual read" of the report will unveil its unreasonableness. (*Id.*) GoDaddy also protests the reasonableness of RPost's "serial" patent "enforcement campaign." (*Id.* at 16–19). Specifically, GoDaddy asserts that the 550+ "patent infringement demand letters" that RPost sent to "patent infringement targets" within a span of two years demonstrates that RPost is a "highly litigious" "patent enforcement entity" that must be deterred. (*Id.*)

RPost responds that Mr. Smith's reports were not so objectively unreasonable that

1    fees should be awarded. (Doc. 370 at 11–17). RPost contends that Mr. Smith's second

2    report is not properly before the Court as GoDaddy never moved to exclude it before

3    judgment entered in this case. (*Id.*) RPost also insists that regardless of whether it is a

4    "patent enforcement entity," as holder of the Asserted Patents, it has the unrestricted right

5    to enforce them to protect its patented technology. (*Id.* at 17–20). Accordingly, RPost

6    argues that its litigation conduct was reasonable and made in good faith. (*Id.*)

7              **a.      Mr. Smith's Expert Damages Reports**

8           Mr. Smith's second damages report was never introduced into the record before

9    GoDaddy's motion for attorneys' fees, nor did GoDaddy move to challenge the second

10   report under *Daubert* before the Court entered judgment in this case. For these reasons

11   alone, the Court finds no reason to conduct a *Daubert* analysis on Mr. Smith's second

12   report or even administer a "casual read" of the report for attorneys' fees purposes. The

13   Court further finds consideration of the second report to be unnecessary because Mr.

14   Smith's first report was not so unabashedly riddled with problems that the mere

15   advancement of it could be considered unreasonable. The law of damages in patent

16   infringement litigation is difficult to navigate and shifts routinely. Damages experts in

17   patent infringement litigation are faced with the daunting task of molding something

18   concrete (a reliable damages figure) out of fine sand (e.g., financial reports, prior

19   licensing agreements, the parties' negotiating positions). Although the Court excluded

20   Mr. Smith's first report as unreliable under *Daubert*, the underlying principles of the

21   report were not so devoid of legal support that it was unreasonable for RPost to advance

22   it. For example, although the Court held that Mr. Smith improperly supported his findings

23   and figures as to the Feldbau Patent with admissible evidence, (Doc. 327 at 10–14), he at

24   least attempted to calculate damages using a running royalty rate, which is one of the two

25   ways to calculate patent damages, *see* (*id.* at 2–3). In this regard, the Court specifically

26   rejected GoDaddy's primary argument that the report was foundationally flawed due to

27   Mr. Smith's attempted apportionment of the royalty rate in lieu of the royalty base. *See*

28   (*id.* at 18 n.10) (spurning GoDaddy's argument because it was "not an accurate recitation

of Federal Circuit law"). Overall, the Court finds that its exclusion of Mr. Smith's expert report falls within the realm of "most cases" that do not "trigger a finding of litigation misconduct." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920 (Fed. Cir. 2012).[8]

### b.    RPost's "Serial" Enforcement Campaign

In its final cast to catch attorneys' fees under § 285, GoDaddy asserts that RPost "enforced its patents here and in serial fashion elsewhere such that its enforcement campaign was advanced in a highly unreasonable manner." (Doc. 353 at 8). RPost responds that regardless of whether it enforced the Asserted Patents against multiple entities, it was entitled to do so as owner of the patents. (Doc. 370 at 19).

The Court agrees with GoDaddy that RPost attempted to enforce its patents in a "serial fashion" as evidenced by RPost sending over 550 "patent infringement demand letters" to "target" companies during 2013 and 2014.[9] However, the Court cannot conclude that an award of over $1,000,000.00 in attorneys' fees is warranted based solely on RPost's pre-litigation conduct with non-parties. Although sending over 550 "patent infringement demand letters" within such a short period of time certainly appears to be the prototypical example of "trolling," the fact of the matter is that RPost owns the Asserted Patents and therefore owns the right of enforcement. Enforcement of a patent against one company or a thousand companies is, legally speaking, the same. *See Rates Tech., Inc. v. Braodvox Holding Co., LLC*, 56 F. Supp. 3d 515, 533 (S.D.N.Y. 2014) ("If [a patent owner]'s claims had merit, its status as a hyper-litigious non-practicing entity should not prevent it from bringing suit."). In any event, while "deterrence" of exaction

---

[8] Even if a "casual read" of Mr. Smith's second report generated the issues outlined in GoDaddy's briefing, the Court would not find the report to be "unreasonable." Namely, shifting damages models or apportioning the royalty base rather than the royalty rate to account for the Court's *Daubert* order are not "unreasonable" actions. *See* (Doc. 353 at 10–14). By so stating, however, the Court expresses no opinion as to the *Daubert*-admissibility of the second report.

[9] A list of the recipients of these letters is attached as Exhibit 5 to GoDaddy's motion for attorneys' fees, which is the subject of a pending motion to seal discussed in Section VI, *infra*.

litigation is a relevant factor to consider under § 285, *Octane Fitness*, 134 S. Ct. at 1756 n.6, GoDaddy, not RPost, filed this lawsuit. Moreover, the *Octane Fitness* reasonableness factor focuses on the losing party's litigation conduct with the prevailing party, not the losing party's *pre*-litigation conduct with *non*-parties. *See id.* (requiring district courts to consider "the unreasonable manner in which the case was *litigated*" (emphasis added)). Although the Court does not believe RPost's pre-litigation conduct was unconditionally "reasonable," the Court only gives the "deterrence" factor slight weight in its overall "totality of the circumstances" analysis.

In summary, the Court finds that the reasonableness of RPost's conduct does not make this case "stand out" from other cases when considered in light of the totality of the circumstances. Rather, the teeter-totter of litigation reasonableness on which GoDaddy and RPost sit finds RPost dangling only slightly higher in the air.

### C. Conclusion

For the foregoing reasons, the Court concludes that GoDaddy failed to establish that this case is one of those "rare case[s]" that should be deemed "exceptional." *Octane Fitness*, 134 S. Ct. at 1757. While slight weight is given to the "deterrence" factor based on RPost's "serial" enforcement campaign before this litigation began, there is nothing in the "substantive strength" of RPost's litigating position or in its litigation conduct that causes this case to "stand out" when considered in light of the totality of the circumstances. Accordingly, the Court will exercise its considerable discretion not to award attorneys' fees under § 285.[10]

## IV. RPost's Motion for Attorneys' Fees

### A. Arguments

RPost moves for an award of its attorneys' fees pursuant to Arizona Revised

---

[10] In its motion, GoDaddy also requests $144,480.00 in expert witness fees and $9,835.68 in non-taxable expenses. (Doc. 353 at 19). Because the Court finds that GoDaddy did not meet the lower burden of showing it was entitled to attorneys' fees under § 285, the Court will not award GoDaddy its expert fees or non-taxable expenses under the higher bad-faith standard.

Statute ("A.R.S.") § 12-349 and the Court's inherent authority. (Doc. 356).[11] Despite the Court recently holding that A.R.S. § 12-349 is an inappropriate sanctioning statute for federal courts hearing state law claims, *see R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, No. 3:12-CV-08261-PCT-JAT, 2014 WL 4722487 (D. Ariz. Sept. 23, 2014) ("*R. Prasad*"), RPost believes this case is distinguishable because it is seeking attorneys' fees under A.R.S. § 12-349(A)(1) in lieu of the other provisions of subsection (A), (Doc. 356 at 9). RPost also maintains that this case is distinguishable from the Ninth Circuit's holding in *In re Larry's Apartment, L.L.C.*, 249 F.3d 832 (9th Cir. 2001) ("*Larry's Apartment*") that A.R.S. § 12-349(A) is an inapplicable sanctioning statute for federal courts sitting in diversity. (Doc. 377 at 7). As to the Court's inherent power, RPost argues that GoDaddy acted in bad faith by claiming that RPost fraudulently misrepresented its ownership of the Asserted Patents and engaged in patent misuse. (*Id.* at 7–17).

GoDaddy responds that A.R.S. § 12-349 is an inappropriate sanctioning statute for a federal court to apply as held by *Larry's Apartment*. (Doc. 369 at 2–4). GoDaddy also disagrees with RPost's piecemeal approach to attorneys' fees that would apportion fees for individual sections of a case. (*Id.*) Particularly, GoDaddy disputes that RPost should be awarded fees for prevailing on Count I of GoDaddy's FAC despite GoDaddy's success in invalidating the asserted claims of the Asserted Patents. (*Id.*)

**B.    Analysis**

**1.    A.R.S. § 12-349**

A.R.S. § 12-349 is a sanctioning statute applicable to various forms of attorney misconduct, and RPost's pursuit to morph its application for fees as one rooted in something other than litigation misconduct is misplaced. *See* (Doc. 377 at 7) ("RPost does not seek fees for GoDaddy's conduct in this litigation, but rather for GoDaddy's frivolous fraud claim."). In *R. Prasad*, the Court quoted extensively from *Larry's*

---

[11] RPost originally moved for an award of its attorneys' fees pursuant to 35 U.S.C. § 285 as well. (*Id.* at 15–19). In its reply brief, however, RPost withdrew its motion for fees under § 285. (Doc. 377 at 14). Thus, the Court will not consider whether RPost can recover fees under § 285.

*Apartment* which held that a federal court sitting in diversity did not have the authority to award attorneys' fees under A.R.S. § 12-349. *See* 249 F.3d at 837–40. The Ninth Circuit explained that,

> When it comes to attorneys' fees, we have declared that a federal court sitting in diversity applies state law in deciding whether to allow attorney's fees when those fees are connected to the substance of the case. Thus, attorneys' fees may be awarded by a district court when they are part of the state's substantive, rather than procedural, requirements. However, when fees are based upon misconduct by an attorney or party in the litigation itself, rather than upon a matter of substantive law, the matter is procedural. Imposition of sanctions in that instance depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation.

*Id.* at 838 (internal quotations and citations omitted). RPost cites no authority for its implicit argument that A.R.S. § 12-349 is applicable to actions other than attorney misconduct. Rather, as indicated by *Larry's Apartment*, the Court finds that A.R.S. § 12-349—including § 12-349(A)(1)—applies only to issues of attorney misconduct, not state substantive law. In other words, bringing "a claim without substantial justification" *is* a form of attorney misconduct, not something else. This conclusion is buttressed by the statutory definition of "without substantial justification" as "groundless and . . . not made in good faith." A.R.S. § 12-349(F). Bringing a claim without "good faith" speaks to an attorney's conduct, not to the substance of the claim.[12] Consequently, the underlying issues of RPost's motion for attorneys' fees are procedural, not substantive, thereby making application of A.R.S. § 12-349 improper.[13]

---

[12] Notably, the majority of RPost's motion for attorneys' fees points to GoDaddy's lack of good faith in bringing its claims. *See* (Doc. 356 at 10–13).

[13] This conclusion is further reinforced by the similarities between Federal Rule of Civil Procedure ("Rule") 11(b)(2) and A.R.S. § 12-349(A)(1). *Compare* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]") *with* A.R.S. § 12-349(A)(1) ("[I]n any civil action commenced

RPost also strains to distinguish this case from *Larry's Apartment* by insisting that because the Court heard GoDaddy's state law claim via supplemental jurisdiction rather than diversity jurisdiction, the present circumstances were not resolved by that holding. (Doc. 377 at 7–8). This argument identifies a distinction without a difference. It is firmly established that the *Erie* Doctrine is applicable to cases where a federal court hears a state law claim, regardless of whether the Court obtains jurisdiction over the claim through diversity or supplemental jurisdiction. *See Larry's Apartment*, 249 F.3d at 837 ("It is well established that '[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.'" (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))). Accordingly, the Court finds the fact that it heard GoDaddy's state law claims through supplemental jurisdiction to be inconsequential, *see Cortez v. Skol*, 776 F.3d 1046, 1054 n.8 (9th Cir. 2015), and holds that A.R.S § 12-349(A)(1) is an inapplicable sanctioning statute in this case, *see Stilwell v. City of Williams*, No. 3:12-CV-8053-HRH, 2014 WL 1654530 (D. Ariz. Apr. 25, 2014) ("The Ninth Circuit has held that [A.R.S. § 12-349], which the court of appeals characterized as a 'sanctions statute' does not apply to actions in federal court, even if the court is sitting in diversity." (quoting *Larry's Apartment*, 249 F.3d at 838)).

Even if A.R.S. § 12-349(A)(1) did apply, the Court would deny RPost's request for attorneys' fees. Although GoDaddy's state law fraudulent misrepresentation claim was not convincing, it was not "groundless" or made in bad faith as required by A.R.S. § 12-349(A)(1) and (F). GoDaddy made plausible legal arguments for a broad interpretation of the law regarding fraudulent misrepresentation in the context of patent ownership—an area of the law with sparse legal precedent. Even when viewed in hindsight, GoDaddy's arguments did not cross the line into bad faith.

---

or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses . . . if the attorney or party . . . [b]rings or defends a claim without substantial justification."). Such collation indicates that when a party involved in federal litigation seeks attorneys' fees as a sanction for attorney misconduct related to an Arizona state law claim, it should move pursuant to Rule 11 out of "fairness." *Larry's Apartment*, 249 F.3d at 839.

## 2. Inherent Power

Before awarding sanctions under its inherent authority, the Court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)). As noted above, the Court cannot find that GoDaddy's actions in this case, including GoDaddy's arguments related to its count for patent misuse, amounted to "bad faith." Consequently, the Court will not exercise its "rarely" invoked inherent power to sanction GoDaddy.

### C. Conclusion

For the foregoing reasons, the Court will deny RPost's motion for attorneys' fees.

## V. GoDaddy's Motion for the Court to Review Clerk's Taxation of Costs

On June 21, 2016, GoDaddy requested taxable costs in the amount of $47,423.19, (Doc. 346), and RPost requested taxable costs in the amount of $8,244.78, (Doc. 349). On July 18, 2016, the Clerk of Court taxed costs in favor of GoDaddy and against RPost in the amount of $3,336.05 and in favor of RPost and against GoDaddy in the amount of $2,720.45. (Doc. 374 at 3). On July 25, 2016, GoDaddy timely requested that the Court review the Clerk of Court's taxation judgment. (Doc. 375).

### A. Legal Standard

Title 28, Section 1920 of the United States Code authorizes a judge or clerk of the district court to tax several classes of enumerated costs. 28 U.S.C. § 1920. Pursuant to Rule 54(d)(1), authorized costs "should be allowed to the prevailing party" unless a court, federal statute, or the federal rules otherwise direct. Fed. R. Civ. P. 54(d)(1). The Court's taxation of costs must also comport with the Local Rules of Civil Procedure for the District of Arizona ("Local Rules") which "have the 'force of law' and are binding upon the parties and upon the court[.]" *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (quoting *Martel v. Cty. of Los Angeles*, 34 F.3d 731, 737 (9th Cir. 1994)). Importantly, Local Rule 54.1(e) specifies the items that the prevailing party may receive as taxable costs.

Upon motion for review of a clerk's taxation of costs, a district court reviews *de novo* the clerk's judgment. *United States ex rel. Lindenthal v. General Dynamics Corp.*, 61 F.3d 1402, 1412 n.13 (9th Cir. 1995). Furthermore, "[t]he general rule on the taxation of costs is that the district court has discretion to fix the costs." *Johnson v. Pac. Lighting Land Co.*, 878 F.2d 297, 298 (9th Cir. 1989) (citing *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 233 (1964)). However, "such court discretion does not include the authority to tax costs beyond those authorized by statute." *Id.* at 298 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–43 (1986)). Moreover, in patent litigation, "even in mixed judgment cases, punting is not an option; Rule 54 does not allow every party that won on some claims to be deemed a 'prevailing party.' For the purposes of costs and fees, there can be only one winner. A court must choose one, and only one, 'prevailing party' to receive any costs award." *Shum, v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010). The "prevailing party" is the party who "received some relief on the merits" that "materially alter[ed] the legal relation between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–13 (1992)).

### B.   Analysis

#### 1.   Prevailing Party

Because only one party may be the "prevailing party" for Rule 54 purposes, *id.*, the Court finds that GoDaddy is "the prevailing party" in this case, *see Manildra Milling*, 76 F.3d at 1182.[14] GoDaddy was successful in invalidating the asserted claims of the

---

[14] RPost cites a Ninth Circuit case in support of its argument that there may be more than one "prevailing party" for Rule 54(d) purposes. (Doc. 379) (citing *Economics Lab., Inc. v. Donnolo*, 612 F.2d 405 (9th Cir. 1979)). *Economics Lab* states that "[t]he district court has broad discretion in apportioning and taxing costs where, as here, neither party completely prevailed." 612 F.2d at 411 (citation omitted). Because this case predominately involves patent litigation, however, Federal Circuit law controls the Rule 54 definition of "prevailing party." *See Shum*, 629 F.3d at 1366 ("Federal Circuit law defines 'prevailing party' for the purposes of patent litigation." (citing *Manildra Milling*, 76 F.3d at 1182)). Consequently, the Court must choose "only one" party as "the prevailing party." *Id.* at 1367. To the extent the Court has "discretion" to "modify" Rule

Asserted Patents, a result that "materially alter[ed] the legal relationship between the parties." *Shum*, 629 F.3d at 1367. Accordingly, although the result of this case was a mixed judgment of a state law claim and federal patent law, GoDaddy is "the prevailing party" under Rule 54 and Local Rule 54(d). *See id.*; *Manildra Milling*, 76 F.3d at 1182; *see also Apple Inc. v. Samsung Elecs. Co.*, 2015 WL 4967769, at *8 (N.D. Cal. 2015) (holding that only one party may be the prevailing party under Rule 54 and specifically "reject[ing] Samsung's argument that there may be two prevailing parties" under Rule 54); *Oracle Am., Inc. v. Google Inc.*, 2012 WL 3822129, at *1 (N.D. Cal. Sept. 4, 2012) (stating that even in mixed judgment patent cases the district court must "pick one side as the 'prevailing party' for the purposes of taxing costs"). Consequently, RPost should not be awarded any taxable costs, and the Clerk of Court's taxation judgment in favor of RPost will be vacated.

### 2. Individual Costs

GoDaddy also seeks judicial review of the Clerk of Court's outright denial or reduction of certain transcript costs and denial of surveillance costs that GoDaddy incurred while serving Zafar Khan, RPost's Chief Executive Officer. (Doc. 375 at 2–6).

### a. Deposition Transcript Costs

The Local Rules permit the taxation of the "reporter's charge for an original and copy of a stenographic transcript of a deposition." LRCiv 54.1(e)(3). The relevant standard is whether the transcript was "necessarily obtained for use in the case whether or not the deposition was actually received into evidence or was taken solely for discovery purposes." *Id.* Intuitively, this question should be considered as of the time the deposition was taken, not based on after-judgment hindsight. *See Manildra Milling*, 76 F.3d at 1184 ("The underlying inquiry [for taxation of 28 U.S.C. § 1920(2) deposition transcript costs] is whether the depositions reasonably seemed necessary at the time they were taken.").

The Court agrees with GoDaddy that at the time the technical witnesses, technical

---

54(d)'s requirements and award costs to both parties as RPost suggests, the Court declines to do so because GoDaddy's victory of invalidating the asserted claims overshadows RPost's triumph on Count I of GoDaddy's FAC.

experts, and damage experts were deposed, *see* (Doc. 347 at 2–8), each deposition was "necessarily obtained for use in the case," LRCiv 54.1(e)(3). There is no requirement that a deposition must relate to the particular issue that is ultimately dispositive in a case, and all of these depositions plausibly relate to GoDaddy's declaratory judgment counts, RPost's counterclaim for direct infringement, or calculating damages—all pending issues at the time of the depositions.[15] Accordingly, the Court will tax the permissible costs of these depositions in favor of GoDaddy and against RPost.[16]

In this regard, the invoices produced by GoDaddy concerning these depositions include costs for ill-defined and facially non-taxable items such as "interactive realtime," "Rough Draft/ASCIII," "streaming connection," "Exhibit Scan/OCR/CD," "5 Business Day Delivery," "Color Exhibits," "3 Business Day Delivery," "Appearance Fee," "Next Business Day Delivery," "4 Business Day Delivery," "Internet Realtime," "Processing Fee," "Litigation Support Package," and "Text Streaming (Setup)." (Doc. 347 at 19–46). GoDaddy does not explain how these items are taxable under the Local Rules, despite

---

[15] For example, GoDaddy deposed Ronald Hertz who is GoDaddy's controller and senior financial official. (Doc. 347 at 2–3). Mr. Hertz testified as to the financial information of the accused products and his testimony was relied on by the damages experts. (*Id.*) GoDaddy also deposed Eric Gilbert (GoDaddy's marketing department) and Eric Weiherer (GoDaddy's senior developer in systems and architecture), whose depositions concerned the marketing of the accused products and the basic elements of the system's architecture. (*Id.* at 3). Other examples include RPost's depositions of Jason Haslup and Todd Miller, who are GoDaddy's senior technologist and software developer in systems and operations, respectively. (*Id.* at 2, 3). All of these depositions—and the others listed by GoDaddy in its bill of costs, *see* (*id.* at 2–8)—relate to active issues at the time the depositions were taken. Notably, GoDaddy removed all deposition costs related to its unsuccessful fraudulent misrepresentation claim. *See* (*id.* at 2).

[16] The Court rejects RPost's argument that GoDaddy should not be awarded permissible costs for necessarily obtained deposition transcripts that related to non-dispositive issues because the Court stated in its summary judgment order that GoDaddy "shall take nothing" as to those counts. (Doc. 379 at 4). The order's language "shall take nothing" related to GoDaddy's claim for monetary damages related to those counts, not post-judgment taxation of costs. As "the prevailing party," GoDaddy is entitled to an award of costs. *See* Fed. R. Civ. P. 54(d)(1); LRCiv 54.1(d).

Local Rule 54(e)(3) specifically providing that the only taxable costs associated with a deposition are "[t]he reporter's charge for an original and copy of a stenographic transcript of a deposition[,]" "reasonable expenses of the deposition reporter and notary presiding at the taking of the deposition," "[f]ees for the witnesses at the taking of a deposition[,]" and a "reasonable fee for a necessary interpreter at the taking of a deposition[.]" LRCiv 54(e)(3). Moreover, GoDaddy attempts to tax costs for a "videographer," (Doc. 347 at 7–8, 43, 45), which the Local Rules explicitly identify as a non-taxable cost, LRCiv 54.1(e)(3). The Court finds that GoDaddy's requested deposition costs beyond the stenographic transcript are non-taxable. *See Foraker v. Apollo Grp., Inc.*, No. 3:CV-04-2614-PHX-DGC, 2007 WL 2301269, at *1 (D. Ariz. Aug. 9, 2007), *amended on reconsideration in part*, 2007 WL 2572341 (D. Ariz. Sept. 5, 2007) (denying a taxation request "for condensed transcripts, indexing, litigation support, administration fees, mini transcripts, or appearance fees" under Local Rule 54.1(e)(3)).

Inexplicably, only a few of the invoices provided by GoDaddy actually specify the individual cost for the stenographic transcript. Based on the Court's review of these invoices, the cost for the transcript itself varies from approximately one-third to one-half to three-fourths of the total bill. *See* (Doc. 347 at 24, 28, 30, 46). Accordingly, the Court will not disturb the Clerk's decision to not tax $1,404.00 in videographer costs, *see* (*id.* at 43, 45), and will, in its discretion, tax $14,728.24 (one-third of the remaining $44,189.14) against RPost for the stenographic transcripts, *see* (*id.* at 2–8).[17]

### b.   *Markman* Hearing Transcript

GoDaddy next argues that the Clerk of Court erred by denying GoDaddy's taxation request for the *Markman* Hearing transcript. (Doc. 375 at 4). The Court disagrees. GoDaddy insists that it did not obtain the *Markman* Hearing transcript "for its own use" because it provided the transcript to the Court to rebut an argument RPost made

---

[17] The Court will not tax a higher portion of the requested amount because it was GoDaddy's responsibility to establish the taxable amount. *See* LRCiv 54.1(a). Rather than reject GoDaddy's taxation request outright, the Court will instead tax the deposition transcripts at the lowest percentage of the total bill as calculated from the invoices.

during summary judgment and to support its motion for attorneys' fees. (*Id.*) However, GoDaddy goes on to assert that the transcript "was *used by GoDaddy* and submitted to the Court *in support of GoDaddy's positions*." (*Id.* at 4). Pursuant to Local Rule 54.1(e)(2), if the Court does not "request" a copy of a pre-trial transcript or if it is not prepared pursuant to the parties' "stipulation," it is for counsel's "own use." The rule makes clear that the "[m]ere acceptance by the Court of a copy does not constitute a request." LRCiv 54.1(e)(2). Here, because the Court never "request[ed]" the *Markman* Hearing transcript, *id.*, and the transcript was "used by GoDaddy," (Doc. 375 at 4), the Court will not overrule the Clerk's decision to not tax the transcript's cost against RPost.

### c.   Surveillance Costs

To the extent GoDaddy requests taxation of the surveillance costs it incurred to serve Mr. Khan, (*id.* at 5), the Court does not find the cost to be a "service" expense under Local Rule 54.1(e)(1), nor is it an "other" expense under Local Rule 54.1(e)(10). Accordingly, the Court will not upset the Clerk's judgment that the surveillance cost is non-taxable. *See HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 958 (D. Ariz. 2013) ("The cost of hiring an investigator to locate [the defendant] for service of process is not a 'service fee' [under Local Rule 54.1(e),] rather it is an investigatory fee that is generally not recoverable."); *J & J Sports Prods., Inc. v. Arvizu*, No. CV-12-550-TUC-FRZ, 2014 WL 2135996, at *2 (D. Ariz. May 22, 2014) (denying taxation request for "investigative expenses" under Local Rule 54.1(e)(10)). To the extent GoDaddy asks the Court to award this cost as a non-taxable expense, the request is denied for the reasons expressed in Section III, *supra*.

### VI.   Motions to Seal

When ruling on the parties' motions for attorneys' fees, the Court relied on only one of the documents that the parties requested to be sealed, namely, Exhibit 5 to GoDaddy's motion for attorneys' fees ("Exhibit 5"). Accordingly, rather than consider the merits of the motions to seal, all of the documents the Court did not rely on will be stricken from the record. Also, because the Court did not rely on where GoDaddy's

servers are located or counsels' billing rates or task descriptions, the Court will not require RPost to refile its Opposition to Plaintiff GoDaddy.com, LLC's Motion for an Award of Attorneys' Fees and Related Non-Taxable Costs. (Doc. 370). The Court now reviews whether sealing treatment is necessary for Exhibit 5.

Exhibit 5 is a list of RPost's over 550 "patent infringement demand targets." (Doc. 367 at 2). Specifically, this list details the dates on which RPost sent "demand letters" to 553 "patent infringement demand targets" between 2013 and 2014. (*Id.*) RPost claims this document must be sealed because subjecting it to public scrutiny would "put Defendants at risk of suit by the target for, *inter alia*, declaratory judgment of patent infringement or invalidity. Such a disclosure of this information thus could result in its improper use by the targets." (*Id.* at 2–3). RPost also contends that this directory of targets is a "proprietary trade secret." (*Id.* at 2).

The Court firmly disagrees. RPost concedes that the catalogued "demand letters" were sent to over 550 "patent infringement demand targets" but is concerned by the "risk" that the "targets" might sue RPost seeking a declaratory judgment. (*Id.*) While the flaws with this argument are inherent enough, RPost continues to grasp at straws by pronouncing that such a use is legally "improper." (*Id.*) The logic behind RPost's argument is bamboozling. It is beyond dispute that the mere act of RPost sending "patent infringement demand letters" to 553 "targets" bred the "risk" of a declaratory judgment action. Whether this document is sealed or not has no bearing on what a "target"—an entity *intended by RPost* to receive a "demand letter"—will do. Moreover, RPost must certainly comprehend that the "use" it deems "improper" was, in fact, successful. Under RPost's rationale, GoDaddy—despite invalidating the asserted claims of the Asserted Patents and prevailing in this case—"improperly used" the information. Additional reasons to reject RPost's sealing request for this document need not be recounted in detail here; good cause to seal Exhibit 5 has not been shown. RPost's request to seal this document will therefore be denied and, because the Court considered it as part of its attorneys' fees analysis, the Clerk of Court shall strike it from the record and GoDaddy,

as the party advancing this document, shall file it into the public record within two days.

**VII.    Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that GoDaddy's Motion for Attorneys' Fees and Non-Taxable Related Expenses, (Doc. 353), is **DENIED**.

**IT IS FURTHER ORDERED** that RPost's Motion for Attorneys' Fees and Non-Taxable Related Expenses, (Doc. 356), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motions to Seal, (Docs. 354, 360, 372), are **DENIED**. The Clerk of Court shall **STRIKE** from the record the documents lodged at Docket Nos. 355, 361, 368, and 373 and leave them under seal.

**IT IS FURTHER ORDERED** that GoDaddy shall file in unsealed format Exhibit 5 to its motion for attorneys' fees within two days.

**IT IS FINALLY ORDERED** that GoDaddy's Motion for the Court to Review the Clerk's Taxation of Costs, (Doc. 375), is **GRANTED IN PART** and **DENIED IN PART**. The Clerk of Court's Judgment on Taxation of Costs, (Doc. 374), is **VACATED**. GoDaddy is awarded $14,728.24 in taxable costs against RPost, RPost is awarded nothing, and the Clerk of Court shall enter judgment in these amounts accordingly.

Dated this 31st day of August, 2016.

James A. Teilborg
Senior United States District Judge